Rel: July 10, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

————————————————

### CL-2026-0201

————————————————

**Trulieve Cannabis Corp., Trulieve Holdings, Inc., and Trulieve AL, Inc.**

**v.**

**Alabama Medical Cannabis Commission et al.**

**Appeal from Montgomery Circuit Court**
**(CV-26-900441)**

PER CURIAM.

This appeal arises from a judgment of the Montgomery Circuit Court ("the circuit court") that dismissed a complaint seeking judicial review of an administrative order. At issue in the complaint was whether a certain administrative order could lead to the exposure of trade secrets

and other proprietary information at a later administrative hearing. The circuit court determined that it lacked subject-matter jurisdiction to review the administrative order and dismissed the complaint. We disagree, reverse the judgment, and remand this case to the circuit court for further consideration.

This case is the latest in a series of lawsuits (and appellate proceedings) related to the Darren Wesley "Alto" Hall Compassion Act ("the Act"), Ala. Code 1975, § 20-2A-1 et seq., which legalized "medical" marijuana for personal use in the State of Alabama. The Act created the Alabama Medical Cannabis Commission ("the commission") to oversee the implementation of the Act and, specifically, as the Act relates to this case, to issue licenses related to the growing and distribution of medical cannabis. See §§ 20-2A-20 and 20-2A-22, Ala. Code, 1975. The licenses at issue in this case are "integrated facility medical cannabis licenses" ("integrated-facility licenses"). Integrated-facility licenses authorize a company to cultivate, process, and distribute medical cannabis. The Act authorizes the commission to issue five integrated-facility licenses. See § 20-2A-67, Ala. Code 1975. Trulieve Cannabis Corp., Trulieve Holdings,

Inc., and Trulieve AL, Inc. (collectively referred to as "Trulieve") have applied for one of those licenses.

To assist it in selecting recipients for integrated-facility licenses, the commission initiated a competitive, investigative-hearing process. The investigative-hearing process will allow the various applicants to participate in an adversarial hearing conducted by an administrative-law judge ("ALJ") under the procedures contained in the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala. Code 1975. The ALJ would then make a recommendation to the commission for a final decision on which applicants would receive an integrated-facility license.

To prepare for the impending presentation of likely complex evidence, the ALJ issued various scheduling orders and other prehearing directives to applicants for the integrated-facility licenses. The commission and its members describe the process as follows:

> "During months of structured case management, the ALJ entered numerous orders, including a protective order dated November 20, 2025, drafted by Trulieve and negotiated among the parties. [The] ALJ also issued scheduling orders dated December 4, 2025, January 15, 2026, and January 29, 2026. These orders established deadlines and procedures for the production of documents, identification of confidentiality

claims, and preparation for anticipated contested case hearings that were to begin March 23, 2026.

"Specifically relevant to these proceedings, the November 20 Protective Order permitted the parties to designate portions of their documents and information as 'Confidential -- Subject to a Protective Order' ('Confidential') or 'Confidential -- Attorney Eyes Only -- Subject to a Protective Order' ('AEO'). The protective order cautions that the AEO 'designation must be made in good faith and not for the purpose of gaining a tactical advantage.... [and] shall be made only where disclosure to a business representative would create a clearly defined and serious risk of competitive harm.' A party could challenge another party's confidentiality designation 'at any point in these proceedings ... by filing a motion with the [ALJ].' The protective order also allocated the burden of proof as to the designation of documents and information: 'The Designating Entity bears the burden of establishing that the information is entitled to [Confidential] or [AEO] treatment.'"

Brief of the commission and its members, p. 7 (citations omitted).

Pursuant to the November 20, 2025, order ("the protective order"), Trulieve, along with other applicants, submitted a version of its original application for an integrated-facility license with portions of the information redacted and designated as "Confidential -- Attorney Eyes Only" ("AEO"). The intended effect of those redactions would be to prevent another applicant's outside counsel from sharing the

4

designated/protected information with his or her client, i.e., an employee of another applicant.[1] Trulieve describes its designations as follows:

> "Trulieve … complied with this process, making just 17 AEO designations in its 1400-page-long application. Trulieve … reserved AEO designations for information considered to be trade secret information in the medical-cannabis industry. Its AEO designations included, among other things, its business plan, standard operating procedures, policies and procedures manual, manufacturing processes, and engineering layouts. Trulieve … also served all counsel with a privilege log, explaining the basis and nature of all confidentiality designations."

Trulieve's brief, p. 12.

Other applicants submitted redacted versions of their applications as well, while some applicants submitted applications with very limited redactions. It is largely uncontested that Trulieve submitted the most extensive redactions using the AEO designation.

Paragraph 13 of the protective order provides guidance on how disagreements over an applicant's redactions were to be resolved:

> "13. <u>Challenge to Confidential Designation.</u> In the event that any party who has appeared disagrees at any point in these proceedings with any designation made under this

---

[1]The protective order allows for a slightly less stringent designation referred to in the order as "Confidential." This designation would generally prevent disclosure to third parties not connected to the investigative hearing and prohibits the use of the designated information outside the proceedings.

Protective Order, the parties who have appeared shall first try to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, the party objecting to the designation may seek appropriate relief by filing a motion with the Administrative Law Judge. The Designating Entity bears the burden of establishing that the information is entitled to Confidential or Confidential-Attorney-Eyes-Only treatment."

On February 18, 2026, one of the other applicants for an integrated-facility license, Alabama Always, LLC ("Alabama Always"), filed a motion with the ALJ objecting to Trulieve's AEO designations. The motion included an affidavit from an expert in the medical-marijuana industry that stated that "several applicants labeled a significant amount of information in their applications [as AEO] … that does not constitute a trade secret or other confidential or proprietary business information in the cannabis industry." Insa Alabama, LLC ("Insa"), filed a similar motion detailing the AEO designations by Trulieve that it believed were not justified.[2]

Trulieve filed a lengthy response justifying the use of the AEO designations in its application. The response included an affidavit from the "Chief Legal Officer and Corporate Secretary for Trulieve Cannabis

---

[2]Another applicant, Jemmstone, Alabama, LLC, filed a motion objecting "to any AEO designation of any materials by any party."

6

Corp.," as well as affidavits from two experts in the medical-cannabis industry. Among other things, Trulieve argued that its designations protect trade secrets of "significant economic value" from being seen and exploited by other applicants who are also Trulieve's competitors in the medical-cannabis industry. Trulieve also continuously reminded the ALJ in its response that the AEO designation did not restrict outside counsel and outside experts of the other applicants from viewing the complete, unredacted integrated-facility application. The AEO designation's primary effect was to restrict employees of the other applicants from seeing Trulieve's unredacted, original application.

On March 10, 2026, the ALJ issued an order ruling on the motions filed by Alabama Always, Insa, and Jemmstone. Extended portions of the order are set out below:

> "I have spent the better part of the past two weeks, including the intervening weekends, going through the accumulated resubmissions of original applications, as now updated and 'shaded' to designate specific assertions of the two confidentiality categories allowable under the Protective Order, as last amended. Of particular interest to me at this stage are assertions of the 'Confidential-Attorney Eyes Only' level of confidentiality. I find that five of the fifteen applicants have advanced that protection for only personal identifiers such as Social Security numbers and bank account numbers. The other ten applicants have asserted that heightened level of protection for a variety of other types of information, in

7

many instances so pervasively and expansively as to conflict with, and frustrate, the policies and mandates for disclosure, transparency, and right of probing cross-examination contained in the combined provisions of the Alabama Administrative Procedure Act, the Alabama Medical Use of Cannabis Act ('AMUCA'), and the Alabama Medical Commission Administrative Code.

"....

"Protection is often claimed in litigation for information that does not qualify as a trade secret, referring to it as, alternatively, proprietary information or confidential information. These broad, generic categories are not well-defined in scope but, like trade secrets, are not absolute and must yield when the ends of justice warrant.

"....

"As the preamble to the November 20, 2025, Protective Order stated, its impetus was that documents and information were being sought, produced and exhibited by and among parties that related to various types of personal or especially sensitive information and the parties desired to 'protect such documents and information from public disclosure or improper use.' That purpose has been well served during the stages of this process up to now. But the many instances of invocation in the 'shaded' materials of Attorneys Eyes Only protection -- which the Protective Order expressly reserves only for those situations 'where disclosure to a business representative would create a clearly defined and serious risk of competitive harm' -- for information not qualifying as such, undercuts the feasibility and practicability of its continued application. Additionally, the need, indeed the right, of each applicant fully to vet and analyze the relevant credentials, qualifications, and expertise of each other applicant, both in advance of and during the hearing, is evident. The competitive injury any particular disclosure might cause a disclosing applicant is tempered by the fact that

8

at this stage there are no true competitors -- none of the applicants will be able to engage in the business of operating an Integrated Facility until the Cannabis Commission ultimately issues the maximum of five licenses statutorily allotted for that category of operation. Once this hearing process has been completed, and I have reviewed the hearing record and issued my recommendations to the Commission, and it has completed its process of review and ultimate issuance of up to five Integrated Facility licenses, then, and only then, will there be business competitors. Each licensee may operate a maximum of five dispensing sites, each located in a different county. Thus, a total of not more than 25 dispensing sites will be in place within Alabama's 63 counties and, probably, all in different counties. Thus, each operational licensee will have only four true competitors, and the proximity of dispensing sites to patient populations will probably be the principal competitive 'draw.'

"Taking everything into consideration in the exercise of a balancing process, I find that it would work an injustice to allow various applicants to advocate their superiority as deserving licensees while shielding pertinent information from all but those allowed access under the Attorney Eyes Only category, and also be in a position to attack the suitability of other applicants who applied that category sparingly.

"Therefore, I rule as follows:

"1.  It is not practical to issue an applicant-by-applicant, aspect-by-aspect analysis of the propriety of every asserted application of Attorney Eyes Only protection. A broader, category-based treatment must be employed.

"2.  The confidentiality category of Attorney Eyes Only is henceforth reserved exclusively for and applicable only to:

"a.  Social Security Numbers and Tax Identification Numbers

9

"b   The home addresses of all <u>natural persons</u> other than those whose addresses are called for by Ala. Code [1975,] § 20-2A-55(a)(2)[,] and <u>also</u> are required to satisfy the residency requirements of § 20-2A-55(a)(l0)

"c.   Personal telephone numbers of <u>natural persons</u>

"d.   Dates of birth

"e.   Income tax returns and financial statements of <u>natural persons</u>

"f.   Banking records of <u>natural persons</u>

"g.   Medical records.

"To the extent any of that information might be pertinent and relevant to the application process, it can be adequately reviewed by those persons authorized to access Attorney-Eyes Only information.

"3.   All other claims, classifications, and categories of Attorney Eyes Only confidentiality are hereby denied and they are automatically converted and relegated to the separate category under the Protective Order of 'Confidential-Subject to a Protective Order.' To the extent that Attorney Eyes Only protection has been sought for records concerning 'security plans,' pursuant to the exemptions for such records from the Open Records Act, codified as § 36-12-40, [Ala. Code 1975,] the protection indirectly provided by that exemption is only from the 'right of every citizen to inspect and take a copy of any public writing of this state,' as otherwise provided by the Act. The protection afforded under the Protective Order for information designated as 'Confidential-Subject to a Protective Order' adequately safeguards such security plans.

"4.   Provided, however, this Order and the resulting conversion of Attorney Eyes Only designations to the less-restrictive category of 'Confidential-Subject to a Protective Order' shall not take effect until noon on Monday, March 16, 2026, in order that any party wishing to attempt to obtain a stay of this Order may have time to secure such a stay. In other words, I recognize the adage that you 'can't unring the bell' once access to information has been provided. Only if a binding 'stay' order has issued from a court of competent jurisdiction will this Order not take effect at noon on March 16, 2026."

On March 12, 2026, Trulieve filed a complaint in the circuit court requesting protection from the ALJ's March 10 order. Count I of the complaint sought a "Judicial Review" of the ALJ's March 10 order pursuant to § 41-22-20, Ala. Code 1975, which allows a circuit court to review preliminary agency rulings in certain limited circumstances. Count II sought a "Declaratory Judgment and Injunction" pursuant to Rule 57, Ala. R. Civ. P., and § 6-6-222, Ala. Code 1975. Finally, Count III asked the circuit court to issue a "Common Law Writ of Mandamus." Also on March 12, 2026, Trulieve asked the circuit court to stay the execution of the March 10 order. The circuit court set a hearing on Trulieve's request for a stay on March 16, 2026.

The parties appeared before the circuit court on March 16 as ordered and made extensive arguments to the circuit court on Trulieve's

11

request for a stay, as well as addressing other aspects of the case.[3] Later that day, the circuit court entered its judgment allowing certain parties (other applicants for licenses) to intervene,[4] denied Trulieve's motion for a stay, and determined as part of the judgment that "it [was] without subject-matter jurisdiction." The circuit court also alternatively ruled that, "with respect to Counts II and III of the Complaint, Alabama Always' Motion for Judgment on the Pleadings would be due to granted as to the argument that all other applicants for licenses would be necessary parties to the case under Rule 19[, Ala. R. Civ. P.]." The circuit court concluded its judgment by ordering that the case be dismissed. Trulieve filed its notice of appeal the same day.[5]

---

[3]The hearing was set to argue Trulieve's motion for a stay of the execution of the March 10 order. However, the arguments were far-ranging and devolved into argument regarding the subject-matter jurisdiction of the circuit court.

[4]The intervenors below were Alabama Always, Insa, Wagon Trail Med-Serv, LLC, and Jemmstone Alabama, LLC.

[5]In its notice of appeal, Trulieve named as appellees the commission; the members of the commission -- Rex Vaughn, Sam Blakemore, Dwight Gamble, Dr. Angela Martin, Dr. Eric Jensen, Loree Skelton, James Harwell, Dr. Mac Barnes, Dr. Jimmie Harvey, Dion Robinson, Dr. William Saliski, Hon. Charles Price, and Taylor Hatchett; the ALJ -- Hon. Bernard Harwood; and the intervenors below (see note 4, supra).

Along with its notice of appeal, Trulieve also filed an "Emergency Motion to Stay" with this court. That motion was granted and then later clarified to reflect that the stay applied only to Trulieve. The commission and its members and Insa filed motions to dissolve the stay, which were denied.[6] This court also entered an order on March 18, 2026, ordering expedited briefing on the merits of Trulieve's appeal.

Because it is fundamental to the outcome of this appeal, we first review the circuit court's determination that it did not have subject-matter jurisdiction over Trulieve's interlocutory request for immediate judicial review. In reviewing that decision, we are guided by the principle that a trial court's "subject-matter jurisdiction [is] subject to de novo review." DuBose v. Weaver, 68 So. 3d 814, 821 (Ala. 2011). See Alabama Med. Cannabis Comm'n v. Alabama Always, LLC, [CL-2024-0588, Mar. 7, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025). Furthermore, "no presumption of correctness" attaches to the circuit court's "dismissal" on that basis. Hudson v. Ivey, 383 So. 3d 636, 639 (Ala. 2023).

Trulieve argues that it has a right of appeal to the circuit court based on § 41-22-20(a), which provides:

---

[6]Alabama Always joined Insa's motion to dissolve the stay.

13

> "(a) A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is aggrieved by a final decision in a contested case is entitled to judicial review under [the AAPA]. <u>A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy</u>."

(Emphasis added.)[7]

The record in this case is clear that Trulieve is seeking review of a preliminary ruling -- the ALJ's March 10 order modifying the protections for trade secrets and other proprietary information -- issued before the investigative hearing. The plain language of § 41-22-20(a) allows judicial review of an agency action "if review of the final agency decision would not provide an adequate remedy." Trulieve argues that waiting until the commission's final decision would not protect it from the release of what has been described as valuable information related to its internal operations. Trulieve further describes its position as follows:

> "The jurisdictional plague that has wiped out most of the medical-cannabis lawsuits has not infected Trulieve's appeal. Trulieve brought an interlocutory administrative appeal -- not a declaratory judgment action -- that presents irreparable

---

[7]Insa is the only other applicant that filed a brief in response to Trulieve's appellant's brief. Insa did not address the circuit court's judgment dismissing the case on subject-matter-jurisdiction grounds in its brief. Another applicant, Alabama Always, joined Insa's brief. The commission and its members did file a brief in which they argued in support of the circuit judge's decision on subject-matter jurisdiction.

14

harm unrelated to the Commission's final licensure decision. This put Trulieve's action squarely within the governing statutory language and the medical-cannabis precedents finding circuit-court jurisdiction. Although the Commission fears that a finding of jurisdiction here will lead to a run on the courthouse, that fear is unfounded. As this Court has continually held, any procedural complaint that can be remedied by getting a license or a final appeal will not give rise to an interlocutory appellate right. Trade secrets are fundamentally different in that respect, thus opening the door to appeal in this limited circumstance."

Trulieve's brief, p. 40.

Thus, the threshold question of subject-matter jurisdiction hinges on whether a later judicial review of the commission's final decision on integrated-facility-license awards would provide the opportunity for an adequate remedy for the improper release of alleged trade secrets. We agree with Trulieve that it would not and that the circuit court has subject-matter jurisdiction to review the March 10 order. In reaching that decision, we briefly examine the unique nature of trade secrets and the protection afforded such information during litigation.

We first note that it is the public policy of this state that information qualifying as a "trade secret" is protected from disclosure under the law. See § 8-27-3, Ala. Code 1975 ("A person who discloses or uses the trade secret of another, without a privilege to do so, is liable to

the other for misappropriation of the trade secret ...."); § 13A-8-10.4(c), Ala. Code 1975 ("Theft of trade secrets or trademarks is a Class C felony."); Rule 507, Ala. R. Evid. ("A person has a privilege ... to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."); and Rule 26(c)(7), Ala. R. Civ. P. (authorizing the court to enter a protective order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way").

Those legal protections symbolize the significance of trade secrets and the lengths the law extends to protect them. Conversely, those same protections implicitly recognize that the imprudent and unnecessary release of trade secrets to competitors is a harm to be avoided.[8] On this

---

8

"The issue of trade secret disclosure in litigation requires a balancing of two competing interests: (1) trade secrets are an important property interest worthy of protection, and (2) all facts necessary for the fair adjudication of a lawsuit must be disclosed. These interests are best accommodated by requiring disclosure only if it is necessary for a fair adjudication of the requesting party's claims or defenses. An in camera review may be required to make these determinations."

principle there seems to be little disagreement. The finer point to be addressed here is the timing of judicial review of a trial judge's, or in this case the ALJ's, decision to order the release of trade secrets before a final judgment or decision. The Alabama Supreme Court described the problem as follows:

> "The danger of entrusting [the plaintiff] with the [defendant's] trade secrets is that doing so could harm [the defendant] and there may be no sanction sufficient to protect [the defendant] in the event [the plaintiff] fails to abide by the terms of the protective order; there also may be no system of monitoring what [the plaintiff] or his current employer, a business in competition with [the defendant], do with the information they would be able to glean from this expansive discovery. The Ohio Court of Appeals noted: <u>'If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage.'</u> <u>Gibson-Myers & Assocs. v. Pearce</u>, (No. 19358, Oct. 27, 1999)(Ohio Ct. App. 1999)(unpublished)."

<u>Ex parte Miltope Corp.</u>, 823 So. 2d 640, 644-45 (Ala. 2001) (footnote omitted; emphasis added).

In <u>Ex parte Michelin North America, Inc.</u>, 161 So. 3d 164 (Ala. 2014), the Alabama Supreme Court addressed whether a trial court's

---

2 Louis Altman & Malla Pollack, <u>Callmann on Unfair Competition, Trademarks & Monopolies</u>, § 14:35 (4th ed. 2022) (footnotes omitted).

17

order allowing a plaintiff to conduct an onsite inspection of the defendant's tire plant unfairly and unnecessarily exposed the defendant's trade secrets. The supreme court first recognized that the defendant had met its "initial burden of showing that the information sought to be shielded from disclosure constitutes a trade secret the disclosure of which would result in injury to [the defendant]." Id. at 172. The supreme court further concluded that the plaintiff failed to "establish[] that the information she seeks by way of an inspection of the [defendant's] facility is necessary and relevant to this litigation" and found that the trial court exceeded its discretion in ordering the onsite inspection. Id. at 176.

In addition to the holding referenced above, there are two procedural aspects of Michelin that are relevant to the analysis in this case. First, the defendant in Michelin sought relief by way of a petition for the writ of mandamus during the litigation. That is, the supreme court accepted the defendant's petition for assistance in protecting its trade secrets during the ongoing litigation in the court below. The defendant was not left with addressing the injury on appeal after a final judgment. Id. at 167. Also, the standard of review for a mandamus petition, which was cited by the supreme court in Michelin, includes the

18

principle that the party seeking mandamus relief must show that it "'"'does not have an adequate remedy by ordinary appeal.'"'" Id. at 170 (citations omitted; emphasis added). Thus, the ruling in Michelin and its procedural posture clearly support Trulieve's position that its complaint for judicial review fits squarely within the language of § 41-22-20(a) allowing for "immediate review" of an interlocutory agency decision.

This court had the opportunity to review the scope of a licensee's right to immediate review under § 41-22-20(a) in Southeast Cannabis Co. v. Alabama Medical Cannabis Commission, [Ms. CL-2024-0300, Dec. 20, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024). In Southeast, the appellants were three businesses that had initially been awarded medical-cannabis-distribution and/or integrated-facility licenses. However, for reasons unimportant to this case, the commission had rescinded the licenses and had awarded them to other entities. Id. at ___. The disappointed applicants ("the applicants") filed complaints in circuit court before the commission's final decision, seeking relief, in part, pursuant to § 41-22-20(a), which allows immediate review of an agency decision. Id. at ___. This court found that the applicants "could be irreparably harmed by a delay in judicial review." Id. at ___. In reaching

19

that conclusion, this court made the following observation: "The remedy of judicial review following a final decision would be inadequate if there is 'some suggestion that the administrative ruling, if incorrect, could not be remedied so as to cause irreparable harm.'" Id. at ___ (citation omitted).

The commission and its members argue in their appellate brief that the exception allowing for "immediate review" of an interlocutory agency decision is a "narrow one." Brief of the commission and its members, p. 17. They further argue that "[a]llowing immediate appellate review of limited procedural matters within the context of the contested-case proceedings would invite similar challenges to routine evidentiary and case-management decisions." Id. at 18.

We agree that the exception is a narrow one. And we are certainly mindful of the litigation that has developed around the medical-cannabis-licensing process. However, the plain language of § 41-22-20(a) clearly contemplates situations in which an interlocutory order of an agency impacts a party's rights in such a way that the order is eligible for judicial review before a final agency decision. The constellation of trade-secret protections found in Alabama law are a clear indication of how important

the privilege from releasing this information is to be considered. Trulieve has presented sufficient evidence showing that the information it is being required to disclose could potentially be trade secrets and that release of the information could potentially be harmful to its ability to compete. Therefore, we hold that the March 10 order falls within the scope of § 41-22-20(a)'s right to immediate judicial review. That being the case, the circuit court erred in concluding it lacked subject-matter jurisdiction over Count I of Trulieve's complaint.[9]

Trulieve asks this court on appeal to vacate "the March 10 order as to Trulieve only" and to order the ALJ to "reject the challenges to Trulieve's trade-secret-privilege claims." Trulieve's brief, p. 9. In the alternative, Trulieve asks this court to remand this case for the "ALJ to

---

[9]As previously indicated, the circuit court alternatively ruled that "Alabama Always' Motion for Judgment on the Pleadings would be due to [be] granted as to the argument that all other applicants for licenses would be necessary parties to the case under Rule 19[, Ala. Rule Civ. P.]." However, that ruling only extended to Counts II and III. Trulieve did not appeal that ruling, and, thus, the circuit court's decision on those counts is not before this court. See Trulieve's reply brief, p. 29 ("The Circuit Court did not rule that Trulieve failed to join necessary parties to its administrative appeal claim, which is what Trulieve asks this Court to reverse.").

apply the established law of trade secrets to the challenges to Trulieve's trade-secret claims." Id. We decline to grant the relief requested.

A petition for judicial review of an agency decision should be filed in the relevant circuit court:

> "A petition shall be filed either in the Circuit Court of Montgomery County or in the circuit court of the county in which the agency maintains its headquarters, or unless otherwise specifically provided by statute, in the circuit court of the county where a party other than an intervenor, resides or if a party, other than an intervenor, is a corporation, domestic or foreign, having a registered office or business office in this state, then in the county of the registered office or principal place of business within this state."

§ 41-22-20(b).

Because the circuit court determined that it did not have subject-matter jurisdiction, it did not exercise any further review of the allegations in Trulieve's complaint under the AAPA. Pursuant to the procedural provisions of the AAPA, the circuit court has the authority to hold hearings, hear arguments, and render an appropriate remedy.[10] That is decidedly the function of a trial court and not an appellate court. This case was in the circuit court for less than a week, and the litigation

---

[10]"The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal ...." § 41-22-20(k), Ala. Code 1975.

22

consisted of a few basic pleadings and one hearing. Accordingly, having determined that the circuit court has subject-matter jurisdiction, we return the case to the circuit court for additional judicial review under the AAPA. See generally Alabama Dep't of Env't Mgmt. v. Friends of Hurricane Creek, 71 So. 3d 673 (Ala. Civ. App. 2011) (vacating the judgment and remanding the case to the circuit court for further proceedings under the AAPA); Covin v. Alabama Bd. of Exam'rs in Counseling, 712 So. 2d 1103, 1107 (Ala. Civ. App. 1998) ("We conclude that the trial court erred in holding that it lacked subject matter jurisdiction to consider Covin's complaint .... Accordingly, we reverse the judgment of dismissal and remand the cause for further proceedings [under the AAPA] ....").

"'In determining a trial court's subject-matter jurisdiction, this Court asks "'only whether the trial court had the constitutional and statutory authority' to hear the case."'" Ex parte Alabama Medicaid Agency, 338 So. 3d 183, 190 (Ala. Civ. App. 2021) (citations omitted). Trulieve has demonstrated that it is the subject of "[a] preliminary, procedural, or intermediate agency action or ruling" and that "review of the final agency decision would not provide an adequate remedy." § 41-

23

22-20(a). Therefore, the circuit court had the authority to hear its complaint. That being the case, we order the circuit court to set aside its March 16, 2026, judgment insofar as it determined that it lacked subject-matter jurisdiction in this case, and we remand this cause to the circuit court for additional proceedings pursuant to the AAPA. Finally, we direct the circuit court to enter an order staying the ALJ's March 10 order, as applied to Trulieve, until such time as the circuit court has addressed Trulieve's request for judicial review of that order.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All the judges concur.